FILED

United States District Court
Middle District of Florida
Tampa Division

LANICE K. GLOVER

    Plaintiff,

v.

HOMEGOODS, INC.

    Defendant.

_____/

CASE NO.:

8:17 cv 732 T 26 TBM

# COMPLAINT AND DEMAND FOR JURY TRIAL

## Introduction

1. This is an action on behalf of the Plaintiff, Lanice K. Glover (hereinafter "Ms. Glover") to secure protection of and redress deprivation of rights secured by 42 U.S.C. § 2000 et seq. providing for injunctive and other relief against race discrimination and retaliation.

2. In April of 2014, Ms. Glover filed a formal charge alleging discrimination on the basis of her Race (African American) and retaliation for questioning a discriminatory promotion policy with the Equal Employment Opportunity Commission (EEOC). (A true and accurate copy of her April 2014 EEOC Charge of Discrimination is marked as Exhibit "A")

3. In June of 2015, Ms. Glover filed a formal charge alleging retaliation for her filing a charge with the EEOC in April of 2014. (A true and accurate copy of her June 2015 EEOC Charge of Discrimination is marked as Exhibit "B")

1

TPA-4265 1
$ 400

4. Ms. Glover received two Notice of Right to Sue letters from EEOC on December 29th, 2016 and the instant complaint is filed within the requisite time frame required under the law. (A true and accurate copy of the Notice of Right to Sue letters is attached as Exhibit "C")

### Parties

4. At all material times herein through her filing of a formal charge with the EEOC, the Plaintiff, resided in Hillsborough County, Florida.

5. HOMEGOODS, INC. is a limited liability company incorporated in the state of Delaware and serving numerous locations throughout the United States of America including multiple locations in Hillsborough County, Florida.

### Jurisdiction and Venue

10. The unlawful employment actions complained of herein took place in Hillsborough County, Florida and venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391 (b).

11. At all relevant times, Homegoods was an Employer within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e, et seq. in that it employed 15 or more individuals in twenty (20) or more weeks in the current or preceding year and was in an "industry affecting commerce" as that term is defined and interpreted under Title VII.

### Factual background

12. Ms. Glover was a key holder at AJ Wright from 2006 to 2010, Women's and customer service coordinator at Marshalls from 2010- 2012. She had significant experience training over a 100+ associates prior to relocating to Tampa, Florida.

13. Ms. Glover (African American) was hired as customer service coordinator by the Defendant to the Dale Mabry Walters Crossing branch on or about April of 2012. She accepted the lesser potion of

2

associate because that was what was available at the time of the hiring.

14. Company policy at Homegoods dictates that all open or vacant positions should be posted.

15. Mr. Kingsbury, the store manager, refused to post or make available potential promotional opportunities.

16. Mr. Kingsbury systematically limited information available to African American employees in the store in an effort to favor the promotional opportunities for Caucasian/hispanic employees for promotional opportunities.

17. There were no African Americans, despite several qualified candidates with experience, that were considered for promotional opportunities at the Dale Mabry Walters Crossing branch between April of 2012 and my departure in December 9, 2012.

18. Ms. Glover was able to transfer to the Brandon, Florida store of Homegoods after repeated attempts and denials for promotional opportunities at the Dale Mabry Walters Crossing branch under Mr. Kingsbury.

19. An employee, Tyler, stole a weapon out of Ms. Glover's vehicle during her shift as a Key holder at the Brandon location. Ms. Glover was unhappy that this theft was not investigated by management, so she sought to separate herself from the situation and the specific employees involved. She requested a lateral or promotional transfer to ANY location.

20. Ms. Glover's request for transfer was granted on September 8, 2013. Ms. Glover was transferred to the Dale Mabry Walters Crossing branch.

21. After her request for transfer had been granted, Ms. Glover continued to make it clear to Mr. Kingsbury that she sought promotional opportunities and was willing to transfer anywhere to move forward with the company.

22. A series of promotions occurred between September and April of 2014 for which Ms. Glover was passed over because of her race (black). These promotions occurred for the following employees

with less experience and seniority: Katia Pablo assistant manager (hispanic female), Bill Cole assistant manager (caucasian male), Meredith Smiley assistant manager (caucasian female), and Mike Santos assistant manager (asian/hispanic male).

## Count One: Race Discrimination

23. **Plaintiff incorporates as if re-alleged paragraphs 1-22.**

24. Because Race was the motivating factor in the Defendant's failure to promote Ms. Glover during her tenure with the Defendant, the Defendant and its agents violated Title VII of the Civil Rights Act of 1964, and the Civil Rights Act of 1991, both as amended, with knowing and/or reckless disregard of the Acts' proscriptions.

## Count Two: Retaliation

25. Ms. Glover incorporates as if re-alleged paragraphs 1-22

26. Ms. Glover engaged in protected activity when she filed her first charge of discrimination and cooperated with the EEOC investigation.

27. From March of 2015 through her constructive discharge on May 14th, 2015, Ms. Glover began experiencing retaliation from management at all levels including: assistant manager Mike Santos, store manager Sara Mundorff, store manager Jennifer Cole and district manager Marty Selgert.

28. Ms. Glover's coworkers, including Megan Gruner, were approached and solicited to write negative or damaging statements to harm Ms. Glover's reputation and manufacture grounds for termination. Ms. Gruner in particular was offered a raise.

29. Ms. Glover received several meritless write-ups and verbal warnings regarding issues that were either not within her purview or blatantly inaccurate for the primary purposes of tarnishing her reputation and/or encouraging her voluntary resignation.

30. During this time period, Ms. Glover took off for a bereavement period to be with her grandmother and family. Ms. Glover had a single day remaining on her bereavement period, but was written up

and verbally reprimanded for not returning to work. Even after corporate clarified that she should not be written up, local management verbally harassed Ms. Glover and sought to withhold her compensation for the paid time off.

31. Ms. Glover was accused by management of being aggressive, disruptive and unfriendly with her coworkers, but was voted associate of the quarter in early 2015.

32. As a part of her "training" program for management, Ms. Glover was asked to perform training and other objectives to prepare her for promotions (none of the above referenced individuals promoted over Ms. Glover participated in this program as a condition to promotion).

33. One of the final steps in the "training" was participating in further training and completing a workbook with Jennifer Cole every week.

34. The first meeting between the parties was limited to Jennifer Cole requesting information about an Orlando conference attended by Ms. Glover.

35. In the second meeting, Ms. Glover was notified that (a) Ms. Cole had never previously performed or participated in "training", (b) Ms. Glover would need to make a transfer to the New Tampa branch, and (c) Ms. Glover would not receive any compensation for this "training".

36. Without (a) any assistant manager in training designation, (b) a guarantee that she would even keep her current position/level within the organization, (c) any compensation for the training, or (d) a reasonably foreseeable likelihood of advancement, Ms. Glover refused to make a transfer to the New Tampa branch.

37. Because she was undergoing consistent harassment and retaliation, Ms. Glover's physical health and emotional state were deteriorating such that she had no choice but to resign her position on May 14th, 2015.

38. By retaliating against, and ultimately constructively discharging the Plaintiff, Defendant and its agents violated Title VII of the Civil Rights Act of 1964, and the Civil Rights Act of 1991, both as

amended.

## Prayer for Relief

WHEREFORE, Plaintiff demands and prays this Court to grant the following relief:

(a) A declaratory judgment providing that the Defendants violated Title VII;

(b) An award of compensatory damages to Plaintiff in an amount equal to his lost compensation, bonuses and benefits, occasioned by Defendant's' misconduct;

(c) An award of general and punitive damages to Plaintiff to compensate her for the mental and emotional distress occasioned by Defendant's' misconduct;

(d) Reasonable attorney's' fees and court costs,

(e) Reinstatement or front pay in lieu of Reinstatement,

(f) A trial by jury on all issues so triable; and

(g) Such other and further relief as the Court deems just and proper.

Submitted: this 29th Day of March, 2017

FRANK M. MALATESTA
Florida Bar No. 0097080
Attorney for Plaintiff
Malatesta Law Office
871 Venetia Bay Blvd., Suite 220
Venice, FL 34285
941.256.3812 PHONE
888.501.3865 FAX
frank@malatestalawoffice.com